937 So.2d 563 (2006)
Robert L. HENRY, Appellant,
v.
STATE of Florida, Appellee.
Robert L. Henry, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC03-1312, SC04-1285.
Supreme Court of Florida.
May 25, 2006.
*565 Neal A. Dupree, Capital Collateral Regional Counsel, William M. Hennis, III, Litigation Director, and Rachel L. Day, Assistant CCRC, Southern Region, Fort Lauderdale, FL, for Appellant/Petitioner.
*566 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, FL, for Appellee/Respondent.
*564 PER CURIAM.
Robert L. Henry appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the circuit court's order denying postconviction relief and deny Henry's habeas petition.

FACTS AND PROCEDURAL HISTORY
The facts of the crimes in this case are set forth in our opinion from Henry's direct appeal:
Around 9:30 p.m. on November 1, 1987, fire fighters and police officers responded to a fire at a fabric store in Deerfield Beach. Inside they found two of the store's employees, Phyllis Harris, tied up in the men's restroom, and Janet Thermidor, on the floor of the women's restroom. Each had been hit in the head with a hammer and set on fire. Harris was dead when found. Although suffering from a head wound and burns over more than ninety percent of her body, Thermidor was conscious. After being taken to a local hospital, she told a police officer that Henry, the store's maintenance man, had entered the office, hit her in the head, and stolen the store's money. Henry then left the office, but returned, threw a liquid on her, and set her on fire. Thermidor said she ran to the restroom in an effort to extinguish the fire. She died the following morning.
Based on Thermidor's statement, the police began looking for Henry and found him shortly before 7:00 a.m. on November 3, at which time they arrested him. Henry initially claimed that three unknown men robbed the store and abducted him, but later made statements incriminating himself. A grand jury indicted Henry for two counts of first-degree murder, armed robbery, and arson. The jury convicted him as charged and recommended the death sentence for each of the murders, which the trial court imposed.
....
The trial court found as aggravating factors that these murders had been committed during the commission of robbery and arson, to avoid or prevent arrest, for pecuniary gain, and in a cold, calculated, and cruel manner and that they were heinous, atrocious, or cruel. The court weighed these aggravators against the statutory mitigating factor that Henry had no prior criminal history and the nonstatutory factor of Henry's service in the Marine Corps. Finding that the aggravators outweighed the mitigators, the court imposed two death sentences.
Henry v. State, 613 So.2d 429, 430, 432 (Fla.1992). On direct appeal, this Court affirmed the jury's guilty verdicts on both counts of first-degree murder and the trial court's sentences of death, as well as the two concurrent terms of life imprisonment for armed robbery with a deadly weapon and arson. Henry v. State, 586 So.2d 1033, 1034-35 (Fla.1991).
Henry appealed his convictions and death sentences to the United States Supreme Court, arguing that the jury instruction on the heinous, atrocious, and cruel aggravator ("HAC aggravator") was inadequate. See Henry, 613 So.2d at 434. The Supreme Court vacated the judgment *567 and remanded the case back to this Court for reconsideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Henry v. Florida, 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992). Upon remand, this Court again affirmed both the convictions and the death sentences. Henry, 613 So.2d at 430, 434. Regarding the HAC aggravator, we held that, since Henry received an expanded jury instruction that both defined its terms and limited its application, the HAC aggravator was not unconstitutionally vague. Id. at 434.
Henry filed his final amended 3.850 motion in October 1998, raising fifty-one claims for relief. The postconviction court held a Huff[1] hearing on June 3, 1999, granting an evidentiary hearing on Henry's claim alleging ineffective assistance of counsel for the failure to have qualified mental health experts assist with the penalty phase defense, including a portion of the subclaim that trial counsel did not make adequate use of Florida Rule of Criminal Procedure 3.216, which authorizes appointment of a mental health expert for the penalty phase. The postconviction court also included a portion of Henry's claim regarding trial counsel's alleged failure to ask the defense expert to address the mitigating factors of Henry's organic brain problems and substance abuse. The trial court limited the focus of the hearing regarding ineffective assistance to the deficient performance prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The first evidentiary hearing was held on October 18, 2000, with additional hearings held on August 6-8, 2001. On January 22, 2003, the trial court entered an order denying all claims in Henry's amended motion for postconviction relief, concluding that they were either procedurally barred, conclusively refuted by the record, facially or legally insufficient as alleged, without merit as a matter or law, or not ripe for consideration.

POSTCONVICTION CLAIMS
On appeal, Henry contests the summary denial of his postconviction claims, as well as the denial of the claims considered at the evidentiary hearing. Finding no error in the trial court's conclusion that the majority of these claims are either procedurally barred,[2] conclusively refuted *568 by the record,[3] facially or legally insufficient as alleged,[4] or without merit as a matter of law,[5] we conclude that only the postconviction claims that were considered at the evidentiary hearing merit discussion, including whether Henry's trial counsel rendered ineffective assistance during the penalty phase of his trial with regard to the presentation of mental health mitigation, and whether this claimed ineffectiveness affected the validity of Henry's decision to waive his right to present mitigation.
In addition, while the trial court granted an evidentiary hearing regarding ineffectiveness of counsel, Henry argues that the hearing was too limited in scope to allow him to fully develop his claim. Henry alleges that he was precluded by the judge from presenting the opinions of his mental health experts as to his mental condition at the time of his crimes, evidence that is relevant to both prongs of the ineffective assistance standard set forth in Strickland. Therefore, Henry maintains that the lower court's decision to limit the evidentiary hearing to the deficient performance prong of Strickland denied him the opportunity for full and fair evidentiary development regarding whether trial counsel rendered constitutionally deficient performance.

I. Ineffective Assistance of Counsel
Henry asserts that the trial court erred in concluding that his trial counsel was not ineffective; instead, he argues that he was not afforded effective assistance of counsel for a number of reasons. Specifically, he argues that trial counsel failed to develop a mitigation strategy that emphasized his drug addiction, both to demonstrate the effects of his long-term polysubstance abuse disorder and to show that he was operating under a cocaine-induced psychosis *569 at the time of the crime. Henry also claims that both the scope and the depth of his mental evaluation were constitutionally inadequate and that trial counsel failed to follow up Henry's initial psychological screening with a full mental health mitigation workup. This deficient performance, Henry claims, constitutes prejudice under Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), since counsel's failure to investigate and present this mitigating evidence was the direct cause of the jury's recommendation of death.
This Court applies a mixed standard of review to ineffective assistance of counsel claims, deferring to the trial court for findings of fact, but reviewing questions of law de novo. Cave v. State, 899 So.2d 1042, 1052 (Fla.2005). Strickland sets forth the standard for ineffective assistance of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
The Supreme Court has further fleshed out the parameters for finding ineffective assistance of counsel regarding the presentation of mitigation in capital cases in Wiggins. In Wiggins, the defendant sought postconviction relief, arguing that his trial counsel rendered constitutionally ineffective assistance by failing to compile and present mitigating evidence regarding his dysfunctional background. 539 U.S. at 516, 123 S.Ct. 2527. Counsel claimed that the decision not to present mitigating evidence was a tactical one, since counsel chose to focus on an alternative strategy in the guilt phase. Id. at 521, 123 S.Ct. 2527. In upholding the lower court's decision finding ineffective assistance, the Supreme Court held that the "principal concern ... is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [defendant's] background was itself reasonable." Id. at 522-23, 123 S.Ct. 2527. The Court noted that the proper inquiry involves "an objective review of [trial counsel's] performance, measured for `reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen `from counsel's perspective at the time.'" Id. at 523, 123 S.Ct. 2527 (citation omitted) (quoting Strickland, 466 U.S. at 688-89, 104 S.Ct. 2052). Given the overwhelming evidence of a severely dysfunctional childhood, the Supreme Court concluded that "[t]he record of the actual sentencing proceedings underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment." Id. at 526, 104 S.Ct. 2052.
"When evaluating claims that counsel was ineffective for failing to investigate or present mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness `deprived the defendant of a reliable penalty phase proceeding.'" Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla.1998)). Other precedent from this Court addresses *570 such a failure in light of a defendant's waiver of mitigation. For example, citing specifically to Henry's direct appeal as illustrative of a waiver that was "knowingly, voluntarily, and intelligently made," this Court in Deaton v. Dugger, 635 So.2d 4, 8 (Fla.1993), found that, despite the defendant's waiver of mitigation, trial counsel was still ineffective for failing to investigate and prepare for the penalty phase proceeding. Id. at 8. The total lack of preparation for the penalty phase meant the defendant "was not given the opportunity to knowingly and intelligently make the decision as to whether or not to testify or to call [possible] witnesses." Id. (quoting trial judge's order). This Court emphasized that the result of the proceeding must have been rendered fundamentally unfair to demonstrate ineffective assistance of counsel. Id.
More recently, in State v. Lewis, 838 So.2d 1102 (Fla.2002), we noted:
[T]he obligation to investigate and prepare for the penalty portion of a capital case cannot be overstatedthis is an integral part of a capital case. Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision.
Id. at 1113 (footnote omitted). In that case, this Court agreed with the trial court's decision to vacate Lewis's death sentence due to trial counsel's ineffectiveness at the penalty phase. Id. at 1106-07, 1114. Among trial counsel's shortfalls, we found that "[c]ounsel never contacted any of Lewis's other family members in an attempt to discover potential mitigation, nor did counsel attempt to obtain mitigating evidence that was contained in Lewis's background records." Id. at 1109. Furthermore, trial counsel spent less than eighteen hours preparing for the penalty phase, and also waited more than two weeks after the guilty verdict before seeking the appointment of a mental health expert to testify in the penalty phase. Id. Because of this total lack of preparation, we held that "[trial counsel] was unable to advise Lewis as to potential mitigation which [the] witnesses and records could have offered." Id. at 1113-14. Therefore, due to the lack of a knowing waiver and the "substantial mitigating evidence which was available but undiscovered," this Court determined that Lewis did suffer prejudice from his trial counsel's deficient performance, therefore establishing ineffective assistance. Id. at 1114. Thus, as Lewis makes clear, a defendant's waiver of his right to present mitigation in the penalty phase does not relieve trial counsel of the duty to investigate mitigation to ensure that the defendant's choice to waive his rights is a fully informed decision.
However, we also recognize that counsel's decision not to present certain mitigation evidence may be a tactical decision properly within counsel's discretion. See Brown v. State, 439 So.2d 872, 875 (Fla.1983) ("The choice by counsel to present or not present evidence in mitigation is a tactical decision properly within counsel's discretion."); Valle v. State, 705 So.2d 1331, 1335 n. 4 (Fla.1997) (same); Gorham v. State, 521 So.2d 1067, 1070 (Fla.1988) (same).
Taking both the preceding case law and the factual record of this case into account, we find that the trial court's decision to deny Henry's claim of ineffective assistance of counsel is supported by competent, substantial evidence.

A. Substance Abuse Disorder
First, as to Henry's claim that trial counsel was ineffective for failing to pursue and present evidence of his drug *571 addiction, the record is clear that Henry was adamant that trial counsel not rely on any evidence of intoxication or addiction in Henry's defense, in either the guilt or penalty phases. "When a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." Rose v. State, 617 So.2d 291, 294 (Fla.1993) (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985)).
In attempting to show that trial counsel missed obvious signs that his client had a drug problem at the time of his crime, postconviction counsel produced evidence tending to show that Henry was struggling with a crack cocaine addiction in 1987. However, this does not vitiate Henry's role in firmly and consistently insisting that counsel not pursue such a strategy during trial. It seems clear that trial counsel met with stiff resistance from his client at every turn regarding any efforts to piece together a drug defense for either the guilt phase or for mitigation. Trial counsel's testimony at the evidentiary hearings illustrates that Henry was vehemently opposed to any approach that relied on his drug use. He also made repeated denials of drug use both to counsel and to all three pretrial investigating mental health experts. Accordingly, we conclude that the trial court did not err in finding that trial counsel's assistance was not ineffective in this regard.
On this issue of drug use, Henry also claims ineffective assistance regarding counsel's failure to obtain forensic testing of both a beer can found at the scene of the crime and samples of Henry's nails, hair, and clothing taken at the time of his arrest. He argues that this evidence would have established that he was operating under a cocaine-induced psychosis at the time of his crimes. Trial counsel testified at the evidentiary hearing that, while he was aware of the existence of the can prior to trial, he did not connect the can to Henry's drug use and he did not learn until trial that the can had been modified for drug use. The trial court found that the requested forensic testing would not have been relevant since the testing of the clothing and the blood (forensic testing, but not DNA testing) would not account for Henry's mental state at the time of the crime. The murders occurred between 9 and 9:30 p.m. on November 1, 1987, and Henry was not arrested until 7 p.m. on November 3, 1987; Henry's blood was not extracted until 12:05 a.m. on November 4, 1987. The trial court concluded that testing of the physical evidence for the presence of drugs approximately fifty-two hours after the crime occurred would not have been probative of Henry's mental state at the time of the crime. The trial court also found that the testing of the empty beer can would not have produced relevant evidence which could have been linked to Henry because no discernible fingerprints were discovered on the can. Even if trace amounts of a drug were found on the can, the court concluded that there was no nexus demonstrated between the can and Henry. We find no error in these conclusions.

B. Mental Health Mitigation
Henry also claims that trial counsel was ineffective for not ordering additional mental health evaluations to assist in developing mitigation for use in his penalty phase. This Court held in Rose that "a new sentencing hearing is warranted `in cases which entail psychiatric examinations so grossly insufficient that they ignore clear indications of either mental retardation or organic brain damage.'" 617 So.2d at 295 (quoting State v. Sireci, 502 So.2d 1221, 1224 (Fla.1987)).
The record reflects that at the direction of defense counsel, Henry was evaluated *572 by Dr. Trudi Block-Garfield, a mental health expert, very early on in preparation for his trial. Dr. Block-Garfield testified at the evidentiary hearing that she saw no indication of organic brain damage, mental illness, or retardation, and that, had she noted the need for additional mental health experts at the time of examination, she would have recommended they be consulted. Additionally, trial counsel testified at the evidentiary hearing that, during his entire working relationship with Henry, he did not observe any significant signs that Henry was mentally ill or incompetent in any fashion. Further, trial counsel retained two additional competency experts prior to trial, Drs. John Spencer and Patsy Ceros Livingston, who performed mental health evaluations of Henry and found him to be competent and sane, essentially confirming Dr. Block-Garfield's earlier findings. While not specifically retained to develop mental health mitigation evidence, none of these three mental health experts reported anything to counsel suggesting such mitigation evidence existed or merited further investigation.
While postconviction counsel presented expert testimony during the evidentiary hearings criticizing the adequacy of Dr. Block-Garfield's pretrial evaluation, the trial court ultimately disagreed with the opinions of these experts. It instead found that the two additional competency evaluations, by Drs. Spencer and Livingston, generated closer to the time of trial, were supportive of and consistent with Dr. Block-Garfield's findings. Considering all of the evidence available to the trial judge, we find no abuse of discretion in his conclusion that Henry's trial counsel was not ineffective in the manner and degree to which he investigated the mental health issues and that Henry's counsel was not ineffective for not retaining additional mental health experts.

C. Henry's Waiver of His Right to Present Mitigation
Henry's arguments regarding ineffective assistance of counsel during the penalty phase all culminate in his broader assertion that his decision to waive his right to mitigation was not knowingly and intelligently made. In other words, he claims that since trial counsel did not adequately investigate all of the mitigation that was available to him at the time, Henry was unable to fully appreciate the magnitude of his waiver, thus making his waiver invalid.
Initially, we note that this Court expressly considered the issue of Henry's waiver of mitigation in his direct appeal, finding that "the instant trial court carefully and conscientiously considered this case, as evidenced by the finding of two mitigators in spite of Henry's refusal to allow presentation of more testimony. Thus, we see no error arising from Henry's knowing and voluntary waiver ...." Henry, 613 So.2d at 433. Henry's present claim appears to be an attempt to revisit an issue already raised and rejected by this Court on direct appeal. Such relitigation of old issues under new arguments is prohibited. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) ("It is also not appropriate to use a different argument to relitigate the same issue.").
Regarding the merits of this claim, Henry relies on this Court's decision in Lewis. As previously noted, in Lewis, this Court held that trial counsel was ineffective for not spending sufficient time preparing for mitigation prior to Lewis's waiver. Lewis, 838 So.2d at 1114. In that case, as here, the defendant waived his right to present mitigation; Lewis likewise later argued ineffective assistance of trial counsel, claiming that his attorney did not conduct an adequate penalty phase investigation and therefore could not properly advise him as to the ramifications of waiving his right to *573 present mitigation. Id. at 1108. Furthermore, like Henry, Lewis informed his attorney that he did not want any family members to testify at the penalty phase or for any other form of mitigation to be presented. Id. at 1110.
However, these two cases involve significant differences. First, this Court did not rule on Lewis's waiver of his right to present mitigation on direct appeal, as we did in Henry. Furthermore, trial counsel in Lewis did not obtain any mental competency testing before trial, waiting to retain an expert until after the guilty verdict was rendered. Lewis, 838 So.2d at 1109. In fact, the expert did not have time to render a professional conclusion before the penalty phase began. Id. However, in the instant case, a mental health evaluation had already been performed by the time trial counsel took over, and counsel also moved successfully for the appointment of two additional mental health experts to ensure competency. Also, while the defendants in each case requested that family members not testify at the penalty phase, in Henry's case, trial counsel still contacted and subpoenaed five witnesses so they would be present and available, should Henry change his mind regarding his waiver.
Ultimately, we find no reason, based on the evidence presented at the postconviction hearing, to disturb our earlier ruling approving the trial court's acceptance of Henry's decision to waive his right to present mitigation in the penalty phase of this trial. Furthermore, we do not find that trial counsel rendered ineffective assistance under these circumstances. This Court held in Stewart v. State, 801 So.2d 59 (Fla.2001), that "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 67 (quoting Cherry v. State, 781 So.2d 1040, 1050 (Fla.2000)). Wiggins instructs that the inquiry regarding ineffective assistance and mitigation should focus on whether trial counsel's decision was reasonable at the time the decision was made, without the benefit of hindsight. Certainly, both Wiggins and the ABA Guidelines for Appointment and Performance of Counsel in Death Penalty Cases § 10.11 (rev. ed.2003) on counsel's duties mandate mitigation investigation and preparation, even if the client objects. However, in this case, trial counsel complied with those dictates, investigating mental health issues and other mitigation and even subpoenaing witnesses against his client's consent for the penalty phase in case he changed his mind. Given Henry's adamant, informed refusal to participate in the investigation and preparation of any type of mitigation, we conclude that counsel's preparation and Henry's decision to waive his rights did not deny him of a reliable penalty phase proceeding. See Power v. State, 886 So.2d 952, 959-61 (Fla.2004) (denying ineffectiveness claim based on failure to present mitigating evidence because the failure was a result of compliance with the defendant's request, not lack of investigation).

II. Bifurcation of the Evidentiary Hearing
While we uphold the trial court's ultimate conclusion that trial counsel's performance was not deficient in this instance, thus obviating the need for any inquiry as to whether he suffered the requisite prejudice under Strickland, we also consider Henry's claim of error in the trial court's decision to limit any testimony or evidence presented at the rule 3.850 evidentiary hearing to Strickland's deficient performance prong only.
Recently, we expressed concerns for such practice in Grosvenor v. State, 874 So.2d 1176 (Fla.2004). In that case, the defendant filed a motion for postconviction *574 relief, alleging that trial counsel was ineffective for failing to advise her of a possible defense that presumably would have convinced her to proceed to trial instead of accepting a plea bargain. Id. at 1177. The trial court assumed, for the purposes of the evidentiary hearing, that trial counsel's performance was deficient, and thus only considered whether Grosvenor suffered prejudice under Strickland. Id. at 1178. We explicitly addressed the trial court's decision in that case to bifurcate the issues of performance and prejudice at the evidentiary hearing. Id. at 1182-83. Noting that the stated goal of the bifurcation in that instance was the conservation of time and resources, we concluded that Grosvenor demonstrated that "such a process fails to achieve the desired efficiency." Id. at 1182. Furthermore, we observed:
In many ineffective assistance of counsel claims . . . the deficient performance prong and the prejudice prong are related and can involve similar issues....
In this case, much of the evidence presented at the evidentiary hearing would have been relevant to counsel's alleged deficient performance as well as to prejudice. For example, Grosvenor's trial counsel testified that he considered the voluntary intoxication defense but that Sumter County juries do not view such a defense with favor. This testimony is relevant to whether Grosvenor's counsel performed deficiently in failing to inform her of the voluntary intoxication defense. Because the evidentiary hearing and the trial court's order specifically focused only on the prejudice prong, however, we cannot now consider this evidence to evaluate counsel's performance.
For all these reasons, we are not convinced that bifurcating the hearing in this case achieved any efficiency. Moreover, when a court considers only the prejudice prong and concludes that no prejudice ensued, a later reversal which may not happen until more than a year latermay require another evidentiary hearing on the deficient performance prong, thereby unnecessarily prolonging the process. We suggest that courts consider such problems when determining whether to bifurcate an ineffective assistance of counsel claim.
Id. at 1182-83. Although we have ultimately concluded that the trial court did not err in rejecting Henry's Strickland claims, we nevertheless repeat our concerns from Grosvenor here.
We conclude that while Strickland claims can be properly dispensed with on either of the two prongs, limiting the scope of inquiry at the outset to only one prong seems to create more problems than it solves. First, as in both Grosvenor and the instant case, the two inquiries are often too interrelated to meaningfully separate them for the purposes of evidentiary development. For example, in the case currently before us, the postconviction experts who examined Henry were called in to testify at the evidentiary hearings, but were allowed to testify only as to the sufficiency of Dr. Block-Garfield's mental health evaluation insofar as it related to the adequacy of trial counsel's performance. They were prevented from relating their findings and evaluations regarding Henry's mental condition, which the trial court believed related only to prejudice. However, given the intertwined nature of such inquiries, the transcripts from the evidentiary hearings are full of instances when the parties would object to a line of questioning, forcing the trial court to stop and analyze the particular Strickland prong a potential answer could address and permit or prohibit the question accordingly. While the two inquiries under Strickland ultimately require separate and distinct analyses, limiting evidentiary development *575 to only half of the full query seems to be an awkward approach for answering the broader question of ineffective assistance of counsel in postconviction motions.
When adopting the amendments to Florida Rule of Criminal Procedure 3.851, we clearly stated our intention to "identify and eliminate those capital postconviction procedures that have historically created unreasonable delays in the process, while still maintaining quality and fairness." Amendments to Fla. Rules of Criminal Procedure 3.851, 3.852 3.993, 772 So.2d 488, 489 (Fla.2000). In fact, in adding the requirement for an evidentiary hearing on initial motions for postconviction relief, we specifically sought to reduce the "unwarranted delay[s]" that result when this Court is forced to overturn the trial court on postconviction motions. Id. As emphasized in Grosvenor, given our focus on adjudicating postconviction claims in a timely fashion, bifurcating a Strickland inquiry seems especially problematic, since a reversal by this Court on one prong of Strickland would require new proceedings on the same question of ineffective assistance of counsel as was addressed in the initial round of evidentiary hearings.
However, this case makes it abundantly clear that the ultimate goal of efficiency in postconviction proceedings was not achieved in bifurcating the evidentiary hearing regarding ineffective assistance of trial counsel. Henry originally filed his postconviction motion in October of 1998, with the Huff hearing held in June of 1999; the two subsequent evidentiary hearings were held, both confined to the deficient performance prong only, in October of 2000 and in August of 2001. However, the trial court did not issue its order denying relief until January of 2003, almost seventeen months after the conclusion of the second evidentiary hearing. If this Court had in fact found trial counsel's performance to be deficient, it is clear that the final ruling on Henry's postconviction motion would have been prolonged indefinitely, given the time it would take both for the trial court to schedule another round of evidentiary hearings and for the parties to have time to prepare. Such a protracted timeline is not consistent with this Court's amendments to rule 3.851. While we find no reversible error here, we again caution trial judges to be very careful when considering such a procedure.

PETITION FOR WRIT OF HABEAS CORPUS
Henry raises three claims in his petition for writ of habeas corpus filed directly in this Court: (1) whether appellate counsel failed to raise numerous issues which warranted reversal due to the page number limitation imposed on appellate briefs by this Court; (2) whether appellate counsel failed to raise claims on direct appeal concerning an incomplete record and change of venue; and (3) whether the constitutionality of the first-degree murder indictment must be revisited in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

I. Page Limitations
Unless leave is otherwise granted, this Court limits initial briefs in capital cases to 100 pages. In Basse v. State, 740 So.2d 518 (Fla.1999), this Court explained the rationale for such limitations in holding that district courts have the authority to establish page limitations on writ petitions:
Placing page limits on writ petitions simply requires a petitioner to provide a distinct and succinct focus and improves the ability of a court to issue rulings in writ cases in a more timely and efficient fashion than if the court had to pore *576 through countless pages of what may be unnecessary and repetitive arguments or irrelevant information. Therefore, we conclude that courts may impose reasonable page limits on petitions for extraordinary writs.
Id. at 519. In addition, the federal circuit courts have also upheld reasonable page limitations as conducive to effective appellate advocacy:
Even in a death-penalty case, the court expects counsel to be highly selective about the issues to be argued on appeal and about the number of words used to press those issues....
We do not understand a limitation on the number of pages in a brief to be a blow against an appellant's case or an act that undercuts effective advocacy. To the contrary, we see reasonable limitations of pages to be a help to good advocacy by directing busy lawyers to sharpen and to simplify their arguments in a way thatas experience has taught usmakes cases stronger, not weaker.
United States v. Battle, 163 F.3d 1, 1 (11th Cir.1998). We agree with this reasoning. Furthermore, this Court rejected a similar claim in Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996), in which we held that the page limitation did not preclude the defendant from appealing matters that would not fit within the initial brief. In addition, we find that this claim is insufficiently pled, since Henry does not cite to specific arguments that could have been made had counsel been allowed an infinite page limit. Without any claim as to what meritorious issues could have been argued, it is impossible to determine any prejudice Henry could have suffered from the page limitation.

II. Ineffectiveness of Appellate Counsel
We conclude, as with the page limitation claim, that both of Henry's arguments with regard to ineffective assistance of appellate counsel are insufficiently pled. Regarding the incomplete trial file, Henry argues only that a hearing regarding the voir dire, which was later referenced during voir dire, was not recorded, nor were discussions that occurred during bench conferences. However, there is no discussion of any prejudice resulting from these omissions. Henry further alleges that "critical exhibits, depositions, trial transcripts, the jury questionnaires, and pages from the record on appeal" were omitted. However, other than asserting that these documents are "material" to Henry's claims, Henry does not explain how they are material or why he has suffered prejudice.
This Court faced a similar argument in Thompson v. State, 759 So.2d 650 (Fla. 2000). There, we held:
Thompson contends that this Court was not provided with an adequate record during the direct appeal because some pretrial hearings and bench conferences were not transcribed and included in the appellate record. Because Thompson did not raise any inadequacy in the appellate record during direct appeal, his postconviction claim on this basis is procedurally barred.
In his closely related habeas claims one and two, Thompson asserts that his appellate counsel was ineffective for failing to ensure that a complete record was compiled for the direct appeal and failing to raise this issue on direct appeal.... In order to grant habeas relief on the basis of ineffective assistance of appellate counsel, this Court must determine "first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable *577 performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result."
We have previously rejected a similar claim that appellate counsel was ineffective for failing to have transcribed portions of the record, including parts of voir dire, the charge conference, and a discussion of whether the defendant would testify. We reasoned that "[h]ad appellate counsel asserted error which went uncorrected because of the missing record, or had [the defendant] pointed to errors in this petition, this claim may have had merit." However, because the defendant "point[ed] to no specific error which occurred" during the portions of the record that remained untranscribed, we concluded that appellate counsel was not ineffective. As with the defendant in Ferguson, Thompson has not pointed to any errors that occurred during the untranscribed portions of the proceedings. Therefore, these habeas claims are without merit.
Id. at 660 (citations omitted) (alterations in original) (quoting Groover v. Singletary, 656 So.2d 424, 425 (Fla.1995), and Ferguson v. Singletary, 632 So.2d 53, 58 (Fla. 1993)). Therefore, without any specificity as to how Henry has been prejudiced by the omissions in the record, denial of this claim is warranted under the applicable law.
The change of venue claim is likewise insufficiently pled. Henry devotes only three sentences to this argument in his initial brief, and barely expands upon it in his reply. There are no specific references made to any prejudice Henry suffered as a result of appellate counsel's ineffectiveness in pursuing the change of venue argument. In fact, there is no specific record reference to the alleged "pervasive prejudicial pretrial publicity that permeated this case in Broward county," other than the unsubstantiated statement that such prejudicial publicity existed.
As explained in Thompson, to succeed on a claim of ineffective assistance of appellate counsel, Henry must first demonstrate that the error was so substantial that it fell outside of the range of professionally acceptable performance and, furthermore, that this deficiency compromised the appellate proceedings to such an extent as to undermine confidence in the result. 759 So.2d at 660. Aside from asserting that appellate counsel should have pursued this claim on appeal, Henry has alleged no facts establishing how the confidence in Henry's appeal has been compromised. Thus, we find no merit in these contentions.

III. Relief Pursuant to Ring and Apprendi

We reject this claim because this Court has held that Ring does not apply retroactively to collateral proceedings. Johnson v. State, 904 So.2d 400, 412 (Fla.2005) ("We therefore hold that Ring does not apply retroactively in Florida and affirm the denial of Johnson's request for collateral relief under Ring.").

CONCLUSION
For the reasons stated, we affirm the circuit court's denial of postconviction relief and deny Henry's petition for a writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993).
[2] Because we conclude that they are procedurally barred, we reject Henry's arguments that the following claims were improperly summarily denied: (1) Henry's third statement to the police was involuntary, and it was admitted into evidence in violation of his constitutional rights; (2) the trial court erroneously admitted irrelevant and gruesome photographs into evidence, and trial counsel was ineffective for conceding admissibility; (3) the police lacked probable cause to arrest Henry; (4) Henry did not make a knowing and intelligent waiver of his right to present penalty phase evidence, and trial counsel was ineffective for failing to investigate whether he was capable of waiving his right to present mitigation; (5) the avoid arrest aggravator is unconstitutional, it was improperly applied in this instance, and the jury received inadequate instructions; (6) the jury was improperly instructed regarding the burden of proof at sentencing; (7) the cold, calculated and premeditated aggravating factor was not supported by the evidence; (8) the trial court overbroadly and vaguely instructed the jury on the previous conviction of a violent felony aggravating circumstance; (9) the jury was misled regarding its ability to exercise mercy and sympathy, depriving Henry of a reliable and individualized capital sentencing determination; (10) Henry was absent from critical stages of the proceedings; (11) Henry was denied his constitutional right to a fair and impartial trial when the trial court failed to change venue; (12) Henry was denied effective assistance of counsel at trial because trial counsel failed to object to the use of evidence concerning the decedents and their families; (13) trial counsel was ineffective for failing to object to unreliable scientific and forensic evidence; (14) there was insufficient evidence for the existence of the HAC aggravator; (15) Henry was denied effective assistance of counsel for failing to attack the aggravating circumstances; (16) Henry was denied effective assistance of counsel for failing to object to the admission of Thermidor's dying declaration; and (17) Henry was discouraged from exercising his constitutional right to present evidence by operation of Florida Rule of Criminal Procedure 3.250.
[3] We find that the following claims were properly denied without an evidentiary hearing because they are conclusively refuted by the record: (1) the State withheld evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) Henry's jury was improperly instructed that one single act supported two separate aggravating factors; and (3) the trial court erred in refusing to excuse for cause jurors who were biased in favor of the death penalty.
[4] We conclude that the following claims are facially or legally insufficient as alleged and thus were properly summarily denied: (1) access to certain files pertaining to Henry's case was withheld by certain agencies; (2) access to Henry's trial file was denied by Henry's current counsel; (3) Florida's capital sentencing statute is unconstitutional both on its face and as applied; (4) trial counsel was ineffective for failing to pursue a voluntary intoxication defense; (5) Henry is insane and, therefore, cannot be executed; and (6) the entire body of forensic testimony presented in the case was tainted by the low standards endemic to the Broward Sheriff's Office Forensics laboratory at the time of Henry's arrest.
[5] Because we conclude that the following claims are without merit as a matter of law, we reject Henry's arguments that they were improperly denied without an evidentiary hearing: (1) the jury was improperly instructed on the pecuniary gain aggravator, Henry's death sentence is unconstitutional because of the improper application of the pecuniary gain aggravator, and counsel was ineffective for not objecting to these instructions during the penalty phase; (2) the felony murder aggravator is unconstitutional; (3) the cumulative effect of all the alleged errors amounts to fundamental error; and (4) Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), renders the Florida capital sentencing scheme unconstitutional.