PER CURIAM.
This case is before the Court on appeal from an order denying a successive motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. Because the order concerns post-conviction relief from a capital conviction for which a sentence of death was imposed, this Court has jurisdiction under article V, section 3(b)(1), Florida Constitution. For the reasons set forth below, we affirm.
BACKGROUND
Robert Henry was convicted of the November 1987 first-degree murders of Phyllis Harris and Janet Thermidor at a fabric store in Deerfield Beach, Florida. We affirmed the conviction and sentence on direct, appeal in Henry v. State, 613 So.2d 429 (Fla.1992) (on remand from the United States Supreme Court).[1] The pertinent facts are as follows:
*747 Around 9:30 p.m. on November 1, 1987 fire fighters and police officers responded to a fire at a fabric store in Deerfield Beach. Inside they found two of the store’s employees, Phyllis Harris, tied up in the men’s restroom, and Janet Thermidor, on the floor of the women’s restroom. Each had been hit in the head with a hammer and set on fire. Harris was dead when found. Although suffering from a head wound and burns over more than ninety percent of her body, Thermidor was conscious. After being taken to a local hospital, she told a police officer that Henry, the store’s maintenance man, had entered the office, hit her in the head, and stolen the store’s money. Henry then left the office, but returned, threw a liquid on her, and set her on fire. Thermidor said she ran to the restroom in an effort to extinguish the fire. She died the following morning.
Based on Thermidor’s statement, the police began looking for Henry and found him shortly before 7:00 a.m. on November 3, at which time they arrested him. Henry initially claimed that three unknown men robbed the store and abducted him, but later made statements incriminating himself. A grand jury indicted Henry for two counts of first-degree murder, armed robbery, and arson. The jury convicted him as charged and recommended the death sentence for each of the murders, which the trial court imposed.
. After being arrested, Henry made a total of six oral and taped statements. In the first two he claimed that unknown robbers forced their way into the store and denied any personal involvement. In the other statements he confessed that he acted alone.
Henry, 613 So.2d at 430-31. Even though Henry had been examined for competency by Dr. Trudy Garfield-Block and found to be competent to stand trial, Henry’s counsel moved the court to appoint two additional experts, Drs. Livingston and Spencer, to examine Henry. Both doctors found him to be competent to stand trial. After the guilt phase of trial, Henry waived presentation of all mitigation in the penalty phase. He directed his counsel not to subpoena family members, and did not want a psychiatrist to testify. Id. at 433. He also denied to his counsel and to the doctors who examined him that he had any substance abuse problems or addiction, which his trial counsel believed could have been mitigating. Based on Henry’s demand that no mitigation be presented, no evidence was submitted during the penalty phase.
The jury recommended death for the murder of victim Harris by a vote of eight to four, and recommended death for the murder of victim Thermidor by a vote of nine to three. The trial court imposed the two death sentences after finding as aggravating factors that the murders were committed during the commission of robbery and arson; to avoid or prevent arrest; for pecuniary gain; in a cold, calculated, and cruel manner; and were heinous, atrocious, or cruel. Id. at 432. The mitigators found by the trial court were that Henry had no significant prior criminal history and that he served in the United States Marine Corps. Id. Henry was also sentenced to two concurrent life sentences for armed robbery and arson.
*748 On direct appeal, Henry argued that he should not have been allowed to waive mitigation.[2] Id. at 433. We found no error and explained, “The [trial] court questioned Henry about waiving the presentation of mitigating evidence. Henry persisted in his desire that no such evidence be introduced and made a formal sworn waiver of his right to present evidence at the penalty proceeding.” Id. We held that “the instant trial court carefully and conscientiously considered this case, as evidenced by the finding of two mitigators in spite of Henry’s refusal to allow presentation of more testimony. Thus, we see no error arising from Henry’s knowing and voluntary waiver.... ” Id.
In Henry’s initial postconviction proceeding filed in 1998, he raised fifty-one claims. The postconviction court held a Huff[3] hearing on June 3, 1999, and granted an evidentiary hearing on his claim alleging ineffective assistance of counsel for failure to have qualified expert mental health professionals assist with the penalty phase defense, including a portion of a sub-claim that trial counsel did not make adequate use of Florida Rule of Criminal Procedure 3.216 authorizing appointment of a mental health expert for the penalty phase. The postconviction court also granted an evidentiary hearing on a portion of Henry’s claim regarding trial counsel’s alleged failure to ask the defense expert to address the mitigating factors of alleged organic brain problems and substance abuse. An evidentiary hearing was held October 18, 2000, with continued hearings on August 6-8, 2001. On January 22, 2003, the trial court entered an order denying all claims in Henry’s amended motion for postconviction relief.[4]
On appeal of the postconviction order, we affirmed the denial of postconviction relief and we also denied Henry’s petition for a writ of habeas corpus alleging ineffective assistance of appellate counsel. See Henry v. State, 937 So.2d 563, 577 (Fla.2006). We noted that Henry claimed his trial counsel was ineffective for failing to develop a strategy emphasizing his drug addiction, both to demonstrate the effects of his long-term polysubstance abuse and *749 to show Henry was operating under a cocaine-induced psychosis at the time of the crimes. Henry, 937 So.2d at 568. In resolving this claim, we explained:
First, as to Henry’s claim that trial counsel was ineffective for failing to pursue and present evidence of his drug addiction, the record is clear that Henry was adamant that trial counsel not rely on any evidence of intoxication or addiction in Henry’s defense, in either the guilt or penalty phases. “When a defendant preempts his attorney’s strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made.” Rose v. State, 617 So.2d 291, 294 (Fla.1993) (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985)).
In attempting to show that trial counsel missed obvious signs that his client had a drug problem at the time of his crime, postconviction counsel produced evidence tending to show that Henry was struggling with a crack cocaine addiction in 1987.' However, this does not vitiate Henry’s role in firmly and consistently insisting that counsel not pursue such a strategy during trial. It seems clear that trial counsel met with stiff resistance from his client at every turn regarding any efforts to piece together a drug defense for either the guilt phase or for mitigation. Trial counsel’s testimony at the evidentiary hearings illustrates that Henry was vehemently opposed to any approach that relied on his drug use. He also made repeated denials of drug use both to counsel and to all three pretrial investigating mental-health experts. Accordingly, we conclude that the trial court did not err in finding that trial counsel’s assistance was not ineffective in this regard.
Henry, 937 So.2d at 570-71.
We also noted that the issue of Henry’s waiver of mitigation had been raised in the direct appeal, where we held that the trial court “carefully and conscientiously” considered the case for mitigation, finding two mitigators. Id. at 572 (quoting Henry, 613 So.2d at 433). We noted that although counsel can in some cases be ineffective in failing to pursue mental mitigation in spite of a waiver, such did not occur here because Henry had already been examined by an expert when counsel took over the case, and counsel further obtained the appointment of two additional experts. Henry, 937 So.2d at 573. Even though Henry requested that family members not be called to testify, counsel still contacted and subpoenaed five mitigation witnesses in case Henry changed his mind. Id. Thus, we found no reason to depart from our earlier ruling that the trial court did not err in accepting Henry’s waiver of mitigation; and we further held that trial counsel’s representation was not deficient under the circumstances. Id. We stated, “Given Henry’s adamant, informed refusal to participate in the investigation and preparation of any type of mitigation, we conclude that counsel’s preparation and Henry’s decision to waive his rights did not deny him of a reliable penalty phase proceeding.” Henry, 937 So.2d at 573.
Subsequent to the denial of his initial motion for postconviction relief, Henry filed a motion for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. That motion was denied in October 2007 and Henry failed to file a timely appeal of that ruling. In 2008, Henry filed a motion for belated appeal in this Court, which was treated as a habeas petition and remanded to the circuit court for a hearing to determine if a belated appeal was warranted. The circuit court found .Henry was not entitled to a belated appeal and, in February 2010, this Court, denied the petition for belated appeal. See Henry v. State, 43 So.3d 690 (Fla.2010) (table decision).
*750 Henry also filed a petition for a writ of habeas corpus in federal court, challenging his conviction and death sentences on six grounds: (1) erroneous admission of statements under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) ineffective assistance of trial counsel; (3) erroneous admission of hearsay by a victim; (4) failure to allow DNA testing of a beer can used to smoke crack, which was found twelve days after the murders behind a toilet in the men’s restroom where one of the victims was found, in order to prove voluntary drug intoxication; (5) ineffective assistance of appellate counsel; and (6) that the sentence was disproportionate. See Henry v. McDonough, No. 07-61281-CIV, 2009 WL 762219, at *2 (S.D.Fla. Mar. 19, 2009). In that ease, the federal court denied Henry’s motion to hold the case in abeyance in order for him to return to state court to conduct DNA testing on crime scene evidence and to pursue other claims against his trial counsel, his post-conviction counsel, and the Attorney General. Id. at *1. Henry’s federal petition was denied, as was his application for a certificate of appealability. The United States Supreme Court denied certiorari review. See Henry v. Florida Dept. of Corrs., 559 U.S. 1050, 130 S.Ct. 2367, 176 L.Ed.2d 564 (2010).
THIS CASE
We turn next to the successive postconviction claim Henry raises in this case. Henry claims in this appeal that the circuit court erred in summarily denying his successive postconviction claim that the American Society of Addiction Medicine (ASAM) 2011 Public Policy Statement defining addiction as a brain disorder is newly discovered evidence which, if presented to a jury, would probably result in a life sentence. When a claim of newly discovered evidence is asserted, a defendant must establish two things: First, the defendant must establish that the evidence was not known by the trial court, the party, or counsel at the time of trial and that the defendant or defense counsel could not have known of it by the use of diligence. However, not all new evidence is the equivalent of newly discovered evidence for the purposes of establishing a postconviction claim. Gore v. State, 91 So.3d 769, 775 (Fla.), cert. denied, Gore v. Florida, — U.S. -, 132 S.Ct. 1904, 182 L.Ed.2d 661 (2012). Second, the newly discovered evidence must be of such nature that it would “probably produce an acquittal on retrial.” See Jones v. State, 709 So.2d 512, 521 (Fla.1998) (quoting Jones v. State, 591 So.2d 911, 915 (Fla.1991)). “Newly discovered evidence satisfies the second prong of this test if it ‘weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.’” Heath v. State, 3 So.3d 1017, 1023-24 (Fla.2009) (quoting Jones, 709 So.2d at 526). Where, as here, the newly discovered evidence claim pertains to the penalty phase of trial, the evidence must be of such a nature that it would “probably yield a less severe sentence” on retrial. Schwab v. State, 969 So.2d 318, 325 (Fla.2007) (citing Jones, 591 So.2d at 915).
The ASAM Public Policy Statement on the definition of addiction describes the revised definition as the result of a compilation of two decades of advancements in neurosciences. Thus, it is in the nature of new opinions or research studies based on a compilation or analysis of previously existing data and scientific information. As the circuit court recognized in denying this claim, we held in Schwab that new opinions or new research studies have not been recognized as newly discovered evidence. See Schwab, 969 So.2d at 325-26. We held in Rutherford v. State, 940 So.2d 1112, 1117 (Fla.2006), that an American Bar As *751 sociation report titled Evaluating Fairness and Accuracy in the State Death Penalty System: The Florida Death Penalty Assessment Report (Sept. 2006) was not newly discovered evidence because it was “a compilation of previously available information.” Id. at 1117-18. Similarly, in Johnston v. State, 27 So.3d 11, 20-21 (Fla.2010), we held that a report by the National Academy of Sciences, titled Strengthening Forensic Science in the United States: A Path Forward (2009), was not newly discovered evidence because the report cited to existing publications, some of which were published before the murder occurred in Johnston. Because the revised ASAM definition is the culmination of several decades of advancement in neuroscience, it falls into the same category as the above studies and articles, and thus is not newly discovered evidence.
Henry contends, however, that this ASAM policy statement setting forth a revised definition of addiction falls into the same category as the Federal Bureau of Investigation (FBI) letters that were the subject of our decision in Smith v. State, 75 So.3d 205, 206 (Fla.2011). We disagree. In a letter sent some time after Smith’s trial, the FBI disavowed the testimony of the FBI agent who testified at Smith’s trial on the issue of comparative bullet lead analysis. We remanded for an evi-dentiary hearing on the claim.
Similarly, in Wyatt v. State, 71 So.3d 86 (Fla.2011), we found that the “case-specific letter authored by the FBI” explicitly stating that the FBI agent’s testimony at Wyatt’s trial concerning comparative bullet lead analysis “exceed[ed] the limits of science and [could not] be supported by the FBI” was newly discovered evidence. Id. at 100. Even so, we concluded in Wyatt that the letter did not meet the second prong of the newly discovered evidence test because it was not of such nature that it would probably produce an acquittal on retrial when considered with the other evidence in the case. Id. at 101. These examples are distinguishable from the instant case because the letters in Wyatt and Smith pertained to the unreliability of expert testimony actually given at the defendants’ trials.
In this case, the ASAM policy statement and revised definition did not involve faulty testimony actually given at Henry’s trial, as occurred in Wyatt and Smith. Rather, it is more in the nature of new opinions or research studies based on a compilation or analysis of previously existing data and scientific information. Thus, based on this Court’s precedent in Schwab, Rutherford, and Johnston, the circuit court was correct in holding that the ASAM policy statement setting forth a revised definition of addiction, relating it to a brain disorder rather than a behavioral disorder, is not newly discovered evidence. The circuit court further concluded that the claim was an attempt to relitigate the claim that trial counsel was ineffective for failing to present Henry’s drug addiction or abuse as mitigation. That issue was heard and decided adversely to Henry in the first postconviction proceeding.
The circuit court also held that even if the ASAM policy statement was considered to be newly discovered evidence, it would not meet the second prong of the newly discovered evidence test — that it would probably result in a life sentence. We agree. First, Henry waived introduction of any mitigation at his penalty phase trial. This waiver was affirmed on direct appeal. Henry now argues that he did not want to introduce evidence of drug use or drug addiction at trial because it was viewed unfavorably at that time, but now would be viewed as favorable mitigation. However, because Henry consistently denied drug use and claimed that those who reported his drug use were liars, there is *752 no indication that he rejected introduction of drug addiction at trial because it would have been viewed unfavorably. He also rejected introduction of any favorable mitigation that his family members and friends could have provided. Moreover, his trial counsel testified in the initial postconviction hearing that he personally believed drug addiction could be mitigating, that he attempted on more than one occasion to convince Henry that mitigation evidence was necessary, and he believed that the witnesses he subpoenaed would provide favorable mitigation for Henry. These attempts to present any favorable mitigation were flatly rejected.
Finally, even if the penalty phase jury were presented with evidence that Henry was addicted to crack cocaine or other substances, and that such addiction was a brain disorder, the circuit court was correct that the evidence would not probably produce a life sentence on retrial. Henry was convicted of two brutal murders in which he bludgeoned and burned the victims to death in a robbery. Against the advice of counsel, he took the stand and denied his guilt during trial — retelling his version of events involving masked gunmen — which version was clearly in conflict with his confession that he acted alone in killing the two victims. It was also inconsistent with the dying declaration of one of the victims that Henry was the assailant. The trial court found five strong aggrava-tors, including HAC and CCP. Thus, the circuit court was correct that even if Henry’s drug addiction and the revised ASAM definition of addiction as a brain disorder were admitted at trial, it is not probable that he would receive a life sentence.
CONCLUSION
Based on the foregoing, we affirm the circuit court’s order denying Henry’s successive motion for postconviction relief.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. The original direct appeal opinion affirming Henry’s convictions and sentences, Henry v. State, 586 So.2d 1033 (Fla.1991), was vacated by the United States Supreme Court in Henry v. Florida, 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992), and remanded for reconsideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). In those cases, the Supreme Court held that a former standard jury instruction on the hei *747 nous, atrocious, or cruel aggravating circumstance was inadequate. On remand, this Court noted that in Henry’s trial, a special expanded instruction had been given which was not unconstitutionally vague. Thus, the death sentences were reaffirmed. See Henry v. State, 613 So.2d 429, 434 (Fla.1992), cert. denied, Henry v. Florida, 510 U.S. 1048, 114 S.Ct. 699, 126 L.Ed.2d 665 (1994).

.The issues raised on direct appeal also included admission of the victim's dying declaration, the voluntary nature of Henry's statements to police, admission of photographs, alleged discovery violations, denial of certain jury instructions, whether the aggravators were proven, whether the trial court used an improper standard of proof for the mitigators, sufficiency of the evidence to prove aggrava-tors, challenges to the constitutionality of the death penalty statutes, and propriety of consideration of presentence investigation reports. All these claims were found to be without merit. We also found certain claims were not preserved and not fundamental error: failure to give an instruction on duress; improper prosecutorial comments; the requirement that to preserve first and last arguments, a defendant must forego presenting evidence; improper presentation of victim impact evidence; and allowing the State to proceed on alternative theories of premeditated and felony murder. See Henry, 613 So.2d at 432.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. On April 17, 2003, Henry filed a Supplement to his Motion to Vacate, raising two issues: (1) Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), renders the Florida capital sentencing scheme unconstitutional; and (2) execution by lethal injection is cruel and/or unusual punishment and violates Henry’s rights under the Eighth and Fourteenth Amendments to the United States Constitution. Both issues were appealed. This Court specifically addressed the Ring claim, finding it to be without merit because Ring is not retroactive in collateral proceedings. See Henry v. State, 937 So.2d 563, 575 (Fla.2006). Denial of the lethal injection claim was affirmed as part of the Court’s rejection of Henry’s general claim that Florida’s death penalty scheme is unconstitutional. See id. at 568 n. 4.