921 So.2d 579 (2006)
Clarence Edward HILL, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-2.
Supreme Court of Florida.
January 17, 2006.
*581 D. Todd Doss, Lake City, FL, for Appellant.
Charles J. Crist, Jr., Attorney General and Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
Clarence Edward Hill, a prisoner under sentence of death and an active death warrant, has filed an appeal in this Court from an order of the First Judicial Circuit, in and for Escambia County, denying Hill's successive motion for postconviction relief. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
The factual background and procedural history of this case are set forth in Hill v. State, 515 So.2d 176 (Fla.1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). Since that decision, we have reviewed this case a number of times. We denied Hill's first habeas petition and motion for postconviction relief, Hill v. Dugger, 556 So.2d 1385 (Fla.1990), affirmed Hill's sentence of death in response to the federal court's decision to partially grant his petition for habeas relief, Hill v. State, 643 So.2d 1071 (Fla. 1994), cert. denied 516 U.S. 872, 116 S.Ct. 196, 133 L.Ed.2d 131 (1995), and denied Hill's second motion for postconviction relief. *582 Hill v. State, 904 So.2d 430 (Fla.2005) (table case). The federal courts have also considered this case and ultimately affirmed the denial of habeas corpus relief as to Hill's convictions and death sentence. Hill v. Moore, 175 F.3d 915 (11th Cir. 1999), cert. denied, 528 U.S. 1087, 120 S.Ct. 815, 145 L.Ed.2d 686 (2000).
On November 29, 2005, Governor Bush signed a death warrant ordering that Clarence Hill's sentence of death be carried out on January 24, 2006. Subsequently, Hill filed in the circuit court a successive motion for postconviction relief. He also filed a number of demands for public records and motions to compel information from numerous state agencies. On December 19, 2005, the circuit court held a case management conference on Hill's successive motion for postconviction relief and a hearing on Hill's demands for public records. After requiring one of the agencies to comply with Hill's public records request and granting Hill limited leave to amend his postconviction motion in response to the information he received from this agency, the court issued an order denying Hill's claims on December 23, 2005.
On January 3, 2006, Hill filed this appeal, raising six claims for relief.[1] Oral arguments were heard on January 11, 2006. For the reasons explained below, we affirm the trial court's order denying Hill's successive motion for postconviction relief.
Florida Rule of Criminal Procedure 3.851(h)(5) provides that "[a]ll motions filed after a death warrant is issued shall be considered successive motions and subject to the content requirement of subdivision (e)(2) of this rule." We conclude that all of the claims filed are either without merit or procedurally barred.

Claim I: Lethal Injection
The trial court held that Hill was not entitled to an evidentiary hearing on whether lethal injection, as administered in Florida, constitutes cruel and unusual punishment. Hill's claim is that a research letter published in April 2005 in The Lancet presents new scientific evidence that Florida's procedure for carrying out lethal injection may subject the inmate to unnecessary pain. See Leonidas G. Koniaris et al., Inadequate Anaesthesia in Lethal Injection for Execution, 365 Lancet 1412 (2005). He supports this claim with an affidavit from one of the study's authors, Dr. David A. Lubarsky, asserting that Florida's procedure is substantially similar to the procedures used in the other states evaluated in the study. Hill ultimately asserts that the information in this study is new information not previously available to this Court when it decided Sims v. State, 754 So.2d 657 (Fla.2000). The trial court denied this claim. We agree.
In Sims, we held that "the procedures for administering the lethal injection [in *583 Florida] do not violate the Eighth Amendment's prohibition against cruel and unusual punishment." 754 So.2d at 668. This 2005 study, as found by the trial court, does not sufficiently call into question our holding in Sims. This study applies toxicology data in autopsy reports obtained from Arizona, Georgia, North Carolina, and South Carolina to the protocols used by Texas and Virginia.[2] No toxicology data from Florida was used. Indeed, the study recognizes that the two grams of sodium pentothal administered during lethal injection in Florida is "a relatively large quantity [when] compared with the typical clinical induction dose of 3-5 mg/kg." Koniaris et al., supra, at 1412.[3] Nonetheless, from the autopsy data obtained in these other states, the study hypothesizes that this dose may not be administered properly or is possibly being administered in a way that prevents it from having its intended effect. See Koniaris et al., supra, at 1413. The study ultimately concludes that "public review of lethal injections is warranted." Id. at 1414.
This study does not justify an evidentiary hearing in this case. See Fla. R.Crim. P. 3.852(i); see also Fla. R.Crim. P. 3.851(f)(5)(A). Under Florida Rule of Criminal Procedure 3.851(f)(5)(B), a trial court may deny a request for an evidentiary hearing when "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." The trial court in this case correctly determined that this study does not entitle Hill to relief. As it clearly admits, the study is inconclusive. It does not assert that providing an inmate with "`no less than two' grams" of sodium pentothal, as is Florida's procedure, is not sufficient to render the inmate unconscious. Sims, 754 So.2d at 665 n. 17. Nor does it provide evidence that an adequate amount of sodium pentothal is not being administered in Florida, or that the manner in which this drug is administered in Florida prevents it from having its desired effect.[4] And, in Sims, we rejected the claim that the mere possibility of technical difficulties during executions justified a finding that lethal injection was cruel and unusual punishment. Id. at 668. Therefore, we affirm the trial court's denial of this claim without an evidentiary hearing.[5]

*584 Claim II: Atkins

Under Florida Rule of Criminal Procedure 3.203, Hill was required to raise any claim he may have under Atkins within sixty days of October 1, 2004. He failed to do this; therefore, his claim is procedurally barred.
In addition, the trial court correctly determined that this claim is also procedurally barred under rule 3.851(e)(2)(B). As stated in its December 23, 2005, order, "the Atkins decision was rendered in 2002, and [Hill] has provided no reason as to why he could not have raised this claim in his successive motion filed in 2003." The psychological evaluation Hill primarily relies upon to establish this claim was conducted in 1989. Hill does not claim that this study was not available to him at an earlier time, nor is there any indication that this evaluation was inadequate. While Hill does allege a December 15, 2005, psychological evaluation to support his claim, this evaluation provides no truly new evidence to support Hill's claim. This newest evaluation declares that Hill has "mild mental retardation"; however, it finds Hill's IQ to be sixteen points above the level required to establish mental retardation in Florida. Such a finding does not exempt a defendant from execution. See Zack v. State, 911 So.2d 1190, 1201 (Fla.2005) (finding that in order to be exempt from execution under Atkins, a defendant must meet Florida's standard for mental retardation, which requires he establish that he has an IQ of 70 or below). This claim is procedurally barred.

Claim III: Roper
Hill's third claim is that his mental and emotional age places him in the category of persons for whom it is unconstitutional to impose the death penalty under Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). This claim is without merit.
Roper does not apply to Hill. Hill was twenty-three years old when he committed the crimes at issue. Roper only prohibits the execution of those defendants whose chronological age is below eighteen. See 125 S.Ct. at 1197-98 (recognizing that the rule prohibiting the death penalty for juveniles was necessary even though the mental and emotional differences separating juveniles from adults may "not disappear when an individual turns 18"), see also Rodriguez v. State, 919 So.2d 1252, 1265-67 (Fla. 2005) (affirming the trial court's denial of a motion for postconviction relief even though a mental health expert testified that the defendant's mental age was seven years).

Claim IV: Public Records Requests
The trial court's denial of Hill's public records requests must also be affirmed. We apply the "abuse of discretion" standard to such claims. And, as we stated in Parker v. State, 904 So.2d 370, 379 (Fla.2005) (quoting State v. Coney, 845 So.2d 120, 137 (Fla.2003)), "[d]iscretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." The trial court did not abuse its discretion in denying Hill's demands for additional records.
At the December 19, 2005, hearing, Hill's counsel stated that the agencies from whom he had made appropriate demands for additional public records under Florida Rule of Criminal Procedure 3.852(h)(3) had satisfactorily complied. Therefore, the only public record demands at issue in this *585 appeal are nonspecific demands Hill made to three state agencies to produce "all information that in any way related to public execution."[6] Hill argues that these requests were necessary to establish similarities between the 2005 study discussed in Claim I and lethal injection as it is carried out in Florida. The trial court denied these requests because Hill had not requested information from these agencies before his death warrant was signed, as is required by Florida Rule of Criminal Procedure 3.852(h)(3), or because these claims were overly broad and unrelated to a colorable claim.
The trial court did not abuse its discretion in denying these requests. After a death warrant has been signed, Florida Rule of Criminal Procedure 3.852(h)(3) authorizes public records requests from agencies who have received public records requests from the defendant at an earlier time. Hill does not contest the trial court's finding that he failed to make a previous public records request from Medical Examiner, District 8; therefore, the trial court did not abuse its discretion in denying this demand for additional information.
Moreover, the trial court did not abuse its discretion in denying Hill's other demands on the grounds that they were overly broad. See Moore v. State, 820 So.2d 199, 204 (Fla.2002) (recognizing that a trial court has discretion to review public records requests that are "overly broad, of questionable relevance, and unlikely to lead to discoverable evidence"). The record supports the trial court's finding. Hill's requests were much broader than necessary to obtain information necessary to correlate the lethal injection study to Florida.

Claim V: Shackling
Hill next claims that his constitutional rights were violated when he and his codefendant, Clifford Jackson, were shackled during the penalty phase. The trial court properly denied this claim as procedurally barred. First, there is absolutely no evidence in the record that Hill was ever shackled during the penalty phase. Second, this claim is certainly not based upon newly discovered evidence. Even assuming that Hill was shackled during the penalty phase in 1986, he knew it, and the law of Florida has long provided a basis for the relief he now seeks. Since at least 1987, the law in Florida has been that shackling a defendant during the penalty phase without ensuring that his due process rights are protected is a sufficient ground for reversing a death sentence. See Elledge v. Dugger, 823 F.2d 1439, 1450-51 (11th Cir.1987). Therefore, Hill's assertion that he could not have brought this claim until after the United States Supreme Court decision in Deck v. Missouri, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), is without merit. We affirm the trial court's denial of this claim under Florida Rule of Criminal Procedure 3.851(e)(2)(B).

Claim VI: No Evidentiary Hearing In Prior Proceedings
Finally, we affirm the trial court's finding that Hill's last claim is likewise procedurally barred. Hill's challenge to an earlier trial court's failure to hold an evidentiary hearing in his prior motions for postconviction relief has already been rejected by this Court. Hill v. Dugger, 556 So.2d 1385, 1389 (Fla.1990) (recognizing that "the trial court properly concluded that there was no valid claim of ineffective *586 assistance of counsel ... to justify an evidentiary hearing in [Hill's case]"). Moreover, Hill has presented no reason why he could not have raised at an earlier time the trial court's failure to attach portions of the record to its order following his postconviction motion.
For the reasons explained above, we deny Hill's motion for postconviction relief as well as his request to stay his execution. No motion for rehearing will be entertained.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
I concur in the majority's ruling on all of the issues with the exception of the trial court's summary denial of an evidentiary hearing on appellant's unrebutted claim asserting new evidence as to the constitutionality of Florida's administrative protocol for execution by lethal injection. This new evidence is totally beyond anything considered by this Court or the trial court in Sims.
Hill asserts that a recent scientific study of this protocol published in a highly respected medical journal concludes, through the analysis of empirical after-the-fact data, that the use of the chemicals prescribed in Florida's protocol creates a foreseeable risk of the gratuitous and unnecessary infliction of pain. See Leonidas G. Koniaris et al., Inadequate Anesthesia in Lethal Injection for Execution, 365, 1412-14 (2005). Hill also has presented the sworn affidavit of one of the actual scientists who conducted the study, Dr. David A. Lubarsky. In this affidavit, Dr. Lubarsky states that "the use of this succession of chemicals [prescribed in Florida's protocol], in judicial executions by lethal injection creates a foreseeable risk of the unnecessary infliction of pain and suffering." This opinion is essentially predicated upon the fact that in almost half the cases examined in the study the pain-killer intended to prevent the sensation of pain had actually worn off before the onset of pain from the massive heart attack brought on by the procedure.
In his affidavit Dr. Lubarsky explains that the use of one of the chemicals, pancuronium bromide, is unnecessary to bring about the death of a person being executed by lethal injection. Dr. Lubarsky further explains in his affidavit that when a third prescribed chemical, potassium chloride, reaches the heart, it actually causes a deadly and painful heart attack. He asserts that because of the likelihood that the anesthesia administered in the first chemical will have worn off by that time, the condemned inmate will actually experience the substantial pain of a fatal heart attack brought on by the process. However, the inmate will be unable to communicate his pain because the pancuronium bromide will have paralyzed his face, his arms, and his entire body so that he cannot express himself either verbally or otherwise. Dr. Lubarsky concludes that because Florida's protocol is like those of the states which conducted autopsies and toxicology reports and provided them to him and the other scientists conducting the study, there is a substantial risk that Hill will suffer the same unnecessary pain during his execution.
Despite the fact that Hill presented the results of this recent scientific study and Dr. Lubarsky's findings in an affidavit, the State has failed to rebut or challenge the validity of these findings, which were expressed to a reasonable degree of scientific *587 certainty. Consequently, under our controlling case law on postconviction remedies, the allegations asserted in the claim must be taken as true pending an evidentiary hearing to resolve the claim. Peede v. State, 748 So.2d 253, 257 (Fla.1999); Gaskin v. State, 737 So.2d 509, 516 (Fla.1999). Of course, if there is ever to be an instance when we should adhere to our law mandating an evidentiary hearing it should be here where a pending execution will soon moot the unrebutted claim. In rejecting an evidentiary hearing at the trial level the majority has essentially conducted its own trial on the merits and rendered a summary judgment for the State.
The State also attempts to assert a procedural bar, claiming that Hill has not shown why he did not raise this issue at an earlier time. However, Hill has clearly demonstrated that this new scientific evidence was not available until the publication of the scientific study in 2005. The study and its findings obviously constitute new evidence of the effects of execution by lethal injection. No cases in Florida prior to this one have considered this study. This Court, for example, did not have the benefit of this or any other scientific study when concluding that the protocols were constitutional in Sims.
In fact, this study appears to constitute the first empirical evidence available regarding the effects of lethal injection, thus providing the State and the courts with a unique opportunity to test this method of execution as it is actually being applied. An evidentiary hearing would present a win-win situation for all. The State would undoubtedly benefit from the opportunity to demonstrate the efficacy of its present protocol for lethal injection executions, and to rebut the conclusions of the scientific study. On the other hand, the State may also benefit from this scientific research by having the opportunity to modify its protocol if the study and its results stand up in an evidentiary hearing.
Perhaps the ultimate irony to the denial of an evidentiary hearing in this case, where execution is imminent, is that the State concedes that another trial court in the Fifteenth Judicial Circuit of Florida has ordered that an evidentiary hearing be conducted on this exact same issue in a non-warrant capital case. See Knight v. State, No. 97-05175CFA02 (Fla. Jan. 10, 2006) (granting motion for continuance). Hill, of course, will not be around to benefit if the trial court in Knight determines that Florida's protocol requires modification.
NOTES
[1] Hill raised the following six claims on appeal: (1) the lower court erred in denying Hill's request for an evidentiary hearing on whether the procedure for lethal injection, as it currently exists in Florida, constitutes cruel and unusual punishment; (2) Hill is exempt from execution because of his brain damage or other mental limitations, under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); (3) executing Hill would constitute cruel and unusual punishment under Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), because Hill's mental and emotional capacity is less than eighteen years; (4) the trial court erred in denying Hill's requests for public records; (5) the trial court's decision to place Hill and his codefendant Clifford Jackson in shackles during the penalty phase violated his federal due process rights; (6) the circuit court that reviewed Hill's previous 3.850 motion for postconviction relief erred by denying Hill's motion without granting an evidentiary hearing and by not attaching or citing to specific portions of the record that conclusively demonstrated Hill was entitled to no relief.
[2] The study relies on the autopsy toxicology results obtained from these four states because, according to the authors, they could not obtain this data from Texas or Virginia. Koniaris et al., supra at 1412-13. There is no allegation that either the protocol or autopsy data from Florida was not available to the authors.
[3] In Sims, we detailed the procedure for carrying out lethal injection in Florida. 754 So.2d at 665 n. 17. This included a requirement that inmates be injected with "`no less than' two grams of sodium pentothal, an ultra-short-acting barbiturate which renders the inmate unconscious." Id. The defense expert agreed that this amount of sodium pentothal was a "lethal dose and certain to cause rapid loss of consciousness." Id. at 666 n. 17.
[4] In Sims, we recognized that Florida's procedures address some of the reasons given in the study for finding that two grams of anesthesia "may be overly simplistic." The study attributes its results, in part, to the lack of medical training in the personnel and the inmate's high level of anxiety immediately before the execution. Koniaris et al., supra, at 1412. In Florida, both a doctor and a physician's assistant are present during the execution, and the inmate is provided with a Valium before the execution "if necessary to calm anxiety." Sims, 754 So.2d at 665 n. 17.
[5] Across the nation, courts have rejected claims that The Lancet study requires a new evaluation of the constitutionality of lethal injection. See Brown v. Crawford, 408 F.3d 1027 (8th Cir.2005) (dismissing an appellant's motion for a stay of execution despite the fact that the appellant based his claim under 42 U.S.C. § 1983 in part on The Lancet study at issue here); Bieghler v. State, 839 N.E.2d 691 (Ind.2005) (finding The Lancet study was not sufficient to establish "a reasonable probability that Indiana's method of execution violates the federal or state constitution").
[6] The demands at issue were made to the (1) Office of Attorney General; (2) Office of the Medical Examiner, District 8; and (3) Florida Department of Corrections.