969 So.2d 318 (2007)
Mark Dean SCHWAB, Appellant,
v.
STATE of Florida, Appellee.
No. SC07-1603.
Supreme Court of Florida.
November 1, 2007.
Rehearing Denied November 7, 2007.
*320 Bill Jennings, Capital Collateral Regional Counsel, Mark S. Gruber, Peter J. Cannon, and Daphney Gaylord, Assistant CCRC, Middle Region, Tampa, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, Kenneth S. Nunnelley, Senior Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Mark Dean Schwab, a prisoner under sentence of death and under an active death warrant, appeals the circuit court's order denying his successive motion for postconviction relief, which was filed pursuant to Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a sentence of *321 death, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. For the reasons stated below, we affirm the postconviction court's order denying relief.
This case involves the kidnapping and murder of eleven-year-old Junny Rios-Martinez in April 1991. Schwab was convicted of first-degree murder, sexual battery of a child, and kidnapping, and was sentenced to death. The factual background and procedural history of this case are detailed in this Court's opinion on Schwab's direct appeal. See Schwab v. State, 636 So.2d 3 (Fla.1994). After we affirmed his conviction and sentence of death, Schwab unsuccessfully sought postconviction relief, both before this Court and before the federal courts. See Schwab v. State, 814 So.2d 402 (Fla.2002) (affirming circuit court's denial of motion for postconviction relief and denying petition for writ of habeas corpus); Schwab v. Crosby, 451 F.3d 1308 (11th Cir.2006) (affirming trial court's denial of federal habeas corpus relief), cert. denied, ___ U.S. ___, 127 S.Ct. 1126, 166 L.Ed.2d 897 (2007). On July 18, 2007, Governor Charlie Crist signed a death warrant setting Schwab's execution for November 15, 2007. In response to the signing of the death warrant, Schwab filed a second motion for postconviction relief, raising two claims: (1) Florida's lethal injection method of execution violates the Eighth and Fourteenth Amendments of the United States Constitution and corresponding provisions of the Florida Constitution; and (2) newly discovered evidence reveals that Schwab suffers from neurological brain impairment, which makes his sentence of death constitutionally unreliable. After the State filed its response, the postconviction court summarily denied all claims presented in the successive motion. This appeal follows.

ANALYSIS
In his first claim, Schwab raises numerous subissues relating to whether Florida's lethal injection protocol violates the Eighth Amendment.[1] Schwab first asserts that the postconviction court erred in summarily denying this claim without holding an evidentiary hearing. The State contends that Schwab's challenge to Florida's method of execution is procedurally barred because Schwab should have raised it within one year of the time that lethal injection became a method of execution. We disagree that this claim is procedurally barred. Schwab relies on the execution of Angel Diaz and alleges that the newly created lethal injection protocol does not sufficiently address the problems which occurred in the case of Diaz  a claim that did not exist when lethal injection was first authorized. As this Court has held before, when an inmate presents an Eighth Amendment claim which is based primarily upon facts that occurred during a recent execution, the claim is not procedurally barred. See Buenoano v. State, 565 So.2d 309, 311 (Fla.1990) (holding Eighth Amendment challenge to electrocution was not procedurally barred because the "claim *322 rest[ed] primarily upon facts which occurred only recently during Tafero's execution"); see also Lightbourne v. McCollum, No. SC06-2391 (Fla. order filed Dec. 14, 2006) (relinquishing this same claim to the circuit court for an evidentiary hearing after problems occurred during Diaz's recent execution and implicitly recognizing that this claim was not procedurally barred).
In a somewhat related subclaim, Schwab asserts that the circuit court erred in failing to take judicial notice of the circuit court record in State v. Lightbourne, No. 1981-170CF (Fla. 5th Cir.Ct.) (Lightbourne). Before addressing this claim on the merits, it is important to review the unique circumstances of the Lightbourne case and its impact here.
On December 13, 2006, Angel Diaz was executed by lethal injection, but the lethal chemicals were injected subcutaneously, resulting in an execution which took substantially longer than any previous lethal injection execution in Florida. The next day, Ian Lightbourne and other death row inmates filed an emergency all writs petition, challenging whether Florida's lethal injection protocol violates the Eighth Amendment and requesting a hearing on the matter. This Court relinquished jurisdiction to the circuit court to decide the issues that required factual development, thus implicitly recognizing that the petitioners raised a legally cognizable claim. See Lightbourne v. McCollum, No. SC06-2391 (Fla. order filed Dec. 14, 2006) (relinquishing jurisdiction). While the Eighth Amendment claim was still being litigated in Lightbourne, Governor Crist signed Schwab's death warrant. Schwab then filed a motion for postconviction relief, raising the claim that the procedure for lethal injection is unconstitutional and relying on the newly discovered evidence pertaining to Diaz's execution and the findings of the Governor's Commission on Administration of Lethal Injection.
In the order denying postconviction relief, the court below recognized that judicial oversight of the protocol was appropriate but found that judicial economy would not be served by holding a hearing on the matter when this same issue was already extensively explored by Judge Angel in Lightbourne. Despite this ruling, the court then stated without elaboration: "The parties have stipulated that the Lightbourne hearing testimony may be judicially noticed in this case, but the Court has deliberately elected not to take judicial notice at this time and has not reviewed the evidence presented therein." Schwab challenges this decision, asserting that the postconviction judge should have granted the motion, particularly since both parties stipulated to the introduction of this material and reasonably relied upon the Lightbourne materials being in the record based on the court's initial representations indicating that it would take notice of that testimony.
Section 90.202, Florida Statutes (2006), provides in relevant part:
A court may take judicial notice of the following matters, to the extent that they are not embraced within s. 90.201 [setting forth those items that "must" be judicially noticed]:
. . . .
(6) Records of any court of this state or of any court of record of the United States or of any state, territory, or jurisdiction of the United States.
See § 90.202(6), Fla. Stat. (2006). Taking judicial notice of such matters is purely a matter of judicial discretion. See id.; Elmore v. Fla. Power & Light Co., 895 So.2d 475, 478 (Fla. 4th DCA 2005). Under the unique circumstances of this case and based on the court's other ruling summarily *323 denying relief, we hold that the postconviction court erred in failing to take judicial notice of the record in Lightbourne. Since Schwab's allegations were sufficiently pled, the postconviction court should have either granted Schwab an evidentiary hearing, or if Schwab was relying upon the evidence already presented in Lightbourne, the court should have taken judicial notice of that evidence.[2]Cf. Sims v. State, 750 So.2d 622, 623 n. 3 (Fla.1999) (taking judicial notice of records in Provenzano v. Moore, 744 So.2d 413 (Fla.1999); Provenzano v. State, 739 So.2d 1150 (Fla.1999); Jones v. State, 701 So.2d 76 (Fla.1997); and Jones v. Butterworth, 691 So.2d 481 (Fla.1997)). Nevertheless, the postconviction court's error is harmless because this Court considered all of the evidence presented in Lightbourne when reviewing the Eighth Amendment challenge presented here.
In the third subissue that we address, Schwab challenges the circuit court's ruling which denied his public records requests. Schwab filed an initial motion to compel the production of numerous records from Florida's Department of Corrections (DOC), including materials pertaining to the training of execution team members; the records pertaining to the identity and addresses of non-departmental persons who consulted with the DOC concerning execution training; documentation of the qualifications, licenses, training, and education of execution team members; copies of training manuals and other items pertaining to the training of execution team members; medication management and chemical procurement protocols; records of mock executions; scientific and research materials used by the DOC for preparing lethal chemicals; and any non-disclosure agreements between the DOC and suppliers of the chemicals. The DOC responded with numerous objections. After holding a hearing on the requests and objections, the circuit court issued a lengthy order, finding that Schwab did not demonstrate that the requested records related to a colorable claim for relief and concluded that Schwab was on a fishing expedition.[3] In order to dispute the finding as to a fishing expedition, Schwab filed a motion for reconsideration with an attachment from a "quality assurance auditor," explaining in detail that the quality assurance auditor needed the requested documents in order to provide an assessment as to the reliability and efficacy of the DOC's execution procedures. The circuit court denied the motion for reconsideration, explaining that since it found that an evidentiary hearing was not warranted, the court found no reason to reconsider its prior decision in denying the motion to compel.
As recognized above, Schwab was either entitled to an evidentiary hearing or to have the court below take judicial notice as to the evidence presented in Lightbourne. Schwab does not allege that there were public records that he needed which were not produced or admitted into evidence in Lightbourne. Moreover, while Schwab's motion for consideration did provide more detail as to how the requested information was relevant to his claims, his argument *324 for production relied upon the affidavit of a "quality assurance auditor." Schwab fails to sufficiently explain how this auditor is qualified to provide a reliability and efficacy report on DOC's method of execution. Accordingly, we deny this claim.
In the final lethal injection subissue that we specifically address,[4] Schwab challenges the use of a paralytic drug during an execution, alleging that there is no legitimate clinical reason for using a paralytic and that the Governor's Commission on Administration of Lethal Injection questioned the wisdom of using such a drug.[5] Without commenting specifically on the argument concerning the chemical mix used during lethal injection, the trial court concluded that Schwab did not allege facts which required an evidentiary hearing regarding whether the current DOC protocol might be found to violate his constitutional rights. On appeal, Schwab argues that the trial court erred in summarily rejecting his claim because his factual allegations were not conclusively refuted by the record.
Before addressing Schwab's specific challenge, it is important to note: (1) Schwab does not assert that he would have presented any additional testimony or other evidence regarding pancuronium bromide than that presented in Lightbourne; and (2) Schwab relies upon no new evidence as to the chemicals employed since this Court's previous rulings rejecting this very challenge. In Sims v. State, 754 So.2d 657, 668 (Fla.2000), after reviewing the evidentiary hearing, including testimony from defense experts which questioned the chemicals to be administered during executions, this Court held that "the procedures for administering the lethal injection . . . do not violate the Eighth Amendment's prohibition against cruel and unusual punishment." 754 So.2d at 668. The Court reiterated its Sims holding in Hill v. State, 921 So.2d 579 (Fla.2006), where the petitioner challenged the use of specific chemicals in lethal injection, asserting that a research study published in the medical journal The Lancet presented new evidence that Florida's lethal injection procedures may subject the inmate to unnecessary pain. See id. at 582 (discussing Leonidas G. Koniaris et al., Inadequate Anaesthesia in Lethal Injection for Execution, 365 Lancet 1412 (2005)). This Court held that the study did not justify holding an evidentiary hearing in the case and relied on its prior decision in Sims. Id. at 583; see also Rutherford v. State, 926 So.2d 1100, 1113-14 (Fla.) (rejecting the argument that the study published in The *325 Lancet presented new scientific evidence that Florida's lethal injection procedure created a foreseeable risk of the gratuitous infliction of unnecessary pain on the person being executed), cert. denied, 546 U.S. 1160, 126 S.Ct. 1191, 163 L.Ed.2d 1145 (2006); Rolling v. State, 944 So.2d 176, 179 (Fla.2006) (same).
In turning to the evidence presented in Lightbourne regarding this claim, we find that the toxicology and anesthesiology experts who testified in Lightbourne agreed that if the sodium pentothal is successfully administered as specified in the protocol, the inmate will not be aware of any of the effects of the pancuronium bromide and thus will not suffer any pain. Moreover, the protocol has been amended since Diaz's execution so that the warden will ensure that the inmate is unconscious before the pancuronium bromide and the potassium chloride are injected. Schwab does not allege that he has additional experts who would give different views as to the three-drug protocol. Given the record in Lightbourne and our extensive analysis in our opinion in Lightbourne v. McCollum, we reject the conclusion that lethal injection as applied in Florida is unconstitutional.
In his second claim for relief, Schwab argues that his sentence of death is constitutionally unreliable based upon newly discovered evidence of neurological impairment and a connection between brain pathology and sexual offense. Schwab submitted, as attachments to his rule 3.851 motion, a report by Dr. Hyman H. Eisenstein, Ph.D., a neuropsychologist, which concluded that Schwab suffers from organic brain impairment in the frontal lobe of the right brain, and two recent scholarly articles regarding brain anatomy and sexual offense.
To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla. 1998). If the defendant is seeking to vacate a death sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence. See Jones v. State, 591 So.2d 911, 915 (Fla.1991). Claims in successive motions may be denied without an evidentiary hearing "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief." White v. State, 964 So.2d 1278, 1284 (Fla.2007) (citing Fla. R.Crim. P. 3.851(f)(5)(B)).
We affirm the circuit court's holding that Schwab's claim regarding neurological impairment is procedurally barred because it could have been raised in Schwab's initial postconviction proceeding. The record reveals that Schwab repeatedly alleged that he suffers from brain damage in his initial postconviction motion. The trial court granted Schwab an evidentiary hearing on the claims that included brain damage allegations, and Schwab presented no evidence regarding his brain damage. Schwab had an opportunity to pursue this topic as potential mitigation and failed to do so. Thus, he is now procedurally barred from doing so.
As for Schwab's argument that he is entitled to a new trial due to two recent scientific articles regarding brain anatomy and sexual offense, this Court has not recognized "new opinions" or "new research studies" as newly discovered evidence. Cf. Diaz v. State, 945 So.2d 1136, 1144 (Fla.) *326 (holding doctor's letter discussing lethal injection research was not newly discovered evidence because author's conclusions were based on data from 1950), cert. denied, ___ U.S. ___, 127 S.Ct. 850, 166 L.Ed.2d 679 (2006); Rutherford v. State, 940 So.2d 1112, 1117 (Fla.2006) (holding American Bar Association report published in 2006 was not newly discovered evidence because it was "a compilation of previously available information related to Florida's death penalty system"), cert. denied, ___ U.S. ___, 127 S.Ct. 465, 166 L.Ed.2d 331 (2006).
Even if the articles were "newly discovered" evidence, we agree with the postconviction court that Schwab has not satisfied the second Jones prong. Jones, 591 So.2d at 915. The alleged newly discovered evidence is not of such a nature that it would probably yield a less severe sentence on retrial. While the sentencing judge found that the trial evidence established the "substantially impaired ability to conform one's conduct" mitigating factor, he also found that the trial evidence indicated that Schwab may have been "unwilling" rather than "unable" to control his desires. Accordingly, new evidence truly demonstrating that Schwab could not control his conduct could impact sentencing. However, we agree with the postconviction court that these scientific articles are not such evidence. As the postconviction court found, "neither article affirmatively asserts that [brain damage] causes such crimes as committed by Mr. Schwab." Neither article posits a solely neuroanatomical etiology for sexual offense, nor do the articles negate the sentencing judge's conclusion that carefully planned crimes such as those committed by Schwab are largely inconsistent with Schwab's claim that he could not control his behavior.
Based on the foregoing, Schwab is not entitled to a new trial on the basis of this allegedly newly discovered evidence.

CONCLUSION
For the reasons stated above, we affirm the circuit court's order denying Schwab's successive motion for postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] As to this issue, Schwab asserts that the postconviction court erred by: (1) summarily denying his Eighth Amendment claim; (2) rejecting a foreseeable risk standard; (3) rejecting his argument that the use of a paralytic violates the Eighth Amendment; (4) declining to take judicial notice of another case which was also raising this same claim (the case of State v. Lightbourne, No. 1981-170CF (Fla. 5th Cir.Ct.)); (5) deferring unduly to the Department of Corrections; (6) declining to find that the problems with Angel Diaz's execution are relevant to this claim; (7) denying Schwab's request for public records; (8) rejecting Schwab's argument that consciousness assessment must meet a clinical standard using medical expertise and equipment; and (9) finding the motion for postconviction relief was insufficiently pled.
[2] In this case, judicial notice would have been sufficient because Schwab has not presented any argument as to specific evidence he wanted to present in this case that had not been presented in the Lightbourne proceeding.
[3] Schwab filed the motion to compel prior to filing his motion for postconviction relief, and the court ruled on the motion before the rule 3.851 motion was filed. In its order, the court recognized that it was difficult to assess how certain requested materials would relate to any claim since no claims had yet been filed.
[4] Schwab raises numerous other Eighth Amendment challenges that were also presented in Lightbourne. This Court addresses those arguments in depth in that opinion. Accordingly, we do not repeat those same rulings here but rely on our concurrent holding in Lightbourne v. McCollum, No. SC06-2391, 969 So.2d 326, 2007 WL 3196533 (Fla. Nov.1, 2007), to dispose of Schwab's challenges as to whether the postconviction court erred when it rejected a foreseeable risk standard, deferred unduly to DOC, and rejected his argument that a consciousness assessment must meet a clinical standard using medical expertise and equipment. Schwab also contends that the circuit court erred in finding that his motion was insufficiently pled. We do not interpret the lower court's order as denying the motion as insufficiently pled and thus reject this claim.
[5] The Commission recommended that:

[T]he Governor have the Florida Department of Corrections on an ongoing basis explore other more recently developed chemicals for use in a lethal injection execution with specific consideration and evaluation of the need for a paralytic drug like pancuronium bromide in an effort to make the lethal injection execution procedure less problematic.
The Governor's Commission on Administration of Lethal Injection, Final Report with Findings and Recommendations (March 1, 2007) at 13 (emphasis added).